DECISION AND JUDGMENT ENTRY
{¶ 1} Steven M. Johnson appeals his felony retaliation conviction after a jury trial in the Scioto County Common Pleas Court. On appeal, Johnson contends that insufficient evidence supports his conviction. Because, after viewing the evidence in a light most favorable to the State, we cannot find that any rational trier of fact could have found all the essential elements of retaliation proven beyond a reasonable doubt, we agree. Accordingly, we vacate Johnson's retaliation conviction and sentence and remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 2} A Scioto County Grand Jury indicted Johnson for felonious assault on a police officer in violation of R.C. 2903.11(A)(1), a felony of the first degree, and *Page 2 
retaliation in violation of R.C. 2921.05(A), a felony of the third degree. Johnson entered not guilty pleas and the case proceeded to a jury trial.
 A. State's Version of the Facts at Trial {¶ 3} Johnson purchased beer at about 11 p.m. at a carryout from store clerk Josh Salyers. Johnson then backed his car onto a road, nearly causing a collision with a sheriffs cruiser driven by Scioto County Deputy Sheriff Michael Warner. Because of the near collision, Deputy Warner stopped Johnson.
 {¶ 4} Deputy Warner smelled "a strong odor of intoxicating beverage emitting from the inside of the vehicle." He requested back-up assistance from the Ohio State Patrol for a possible charge of operating a vehicle while intoxicated ("OVI"). He had Johnson exit the vehicle so that he could conduct field sobriety tests. He smelled alcohol on Johnson's person.
 {¶ 5} Johnson became agitated as Deputy Warner performed the field sobriety tests. As time passed, Johnson became more agitated and was not very cooperative. In an attempt to appease Johnson, and while still waiting for a state trooper, Deputy Warner allowed Johnson to make a phone call to his father.During the phone call, Johnson's agitation continued to escalate.
 {¶ 6} Deputy Warner eventually advised Johnson that he was under arrest and going to jail. He grabbed Johnson's phone and a struggle ensued.
 {¶ 7} Johnson grabbed the deputy around the windpipe; placed pressure on the deputy's temples; knocked the deputy's legs out from under him; hit the deputy in the head with a lapel mike; struck the deputy in the thigh and groin area with his knee; and squeezed the deputy's neck until the deputy heard a pop and *Page 3 
began to black out. At some point during the struggle, Johnson told the deputy that he would kill him.
 {¶ 8} The deputy, at the beginning of the struggle, struck Johnson several time with his flashlight to break Johnson's hold. When the deputy began to black out, he pulled his "sidearm" and stuck it into Johnson's side. He told Johnson, "I'll kill you." Eventually, the deputy holstered his weapon and got on top of Johnson. Other officers arrived and rescued the deputy. Salyers, the carryout store clerk arrived and heard Johnson threaten "to kill them all if they'd let him go."
 B. Johnson's Crim.R. 29 Motion For Acquittal {¶ 9} At the end of the State's case-in-chief, Johnson moved the court, pursuant to Crim.R. 29, to acquit him of retaliation based on insufficient evidence. The court overruled his motion. Johnson then presented evidence to the jury. At the close of all the evidence, Johnson again moved the court for a Crim.R. 29 acquittal of the retaliation offense. The court again denied Johnson's motion.
 C. Jury Verdict, Sentencing, Appeal {¶ 10} The jury found Johnson not guilty of the felonious assault on a police officer but guilty of the lesser offense of assault on a police officer. The jury further found Johnson guilty of retaliation. The court accepted the two guilty verdicts and sentenced Johnson accordingly.
 {¶ 11} Johnson appeals his retaliation conviction and asserts the following two assignments of error: I. "The trial court erred when it denied Appellant's motion for acquittal on the charge of retaliation when the evidence was *Page 4 
insufficient to sustain a verdict of guilty." And, II. "Appellant's conviction for retaliation was against the manifest weight of the evidence."
 II {¶ 12} Johnson contends in his first assignment of error that the evidence is insufficient to support his retaliation conviction.
 {¶ 13} The function of an appellate court, when reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Smith, Pickaway App. No. 06CA7, 2007-Ohio-502, ¶ 33, citingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 14} The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." Smith at ¶ 34, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Smith, at ¶ 34, citing Jackson, 443 U.S. at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." Smith, at ¶ 34, citing State v. Thomas (1982), *Page 5 70 Ohio St.2d 79, 79-80; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 15} The retaliation offense in question is set forth in R.C.2921.05(A), which in relevant part states, "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant * * * who was involved in a * * * criminal action * * * because the public servant * * * discharged the duties of the public servant[.]"
 {¶ 16} The crux of Johnson's contention is that the State failed to produce any evidence that showed that the public servant in question "was involved in a criminal action[.]" He asserts that courts interpret R.C. 2921.05(A) to require at least "some judicial involvement * * * in regard to the discharged duties of the public servant[.]"
 {¶ 17} A court starts its analysis of a statute by applying the legislative intent as manifested in the statute's words. Proctor v.Kardassilaris, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12. "In construing the terms of a particular statute, words must be given their usual, normal, and/or customary meanings." Id. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory construction. Id. See, also,Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 96;Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction to arrive at legislative intent. R.C. 1.49; Cline, supra; Carter v. Youngstown (1946), *Page 6 146 Ohio St. 203, paragraph one of the syllabus. Statutes defining offenses are to be strictly construed against the state and liberally in favor of the accused. R.C. 2901.04.
 {¶ 18} Here, the words "was involved in a criminal action" mean that the underlying criminal action is no longer pending. The legislature chose the word "was," which is a past tense verb. A criminal "action is said to terminate at judgment." Black's Law Dictionary (8th Ed.2004) 31, quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885). Further, a criminal action is no longer pending if the prosecutor dismisses it. Therefore, we find that the language of R.C. 2921.05(A) is plain and unambiguous and conveys a clear and definite meaning. As such, the State had to show that the underlying OVI criminal action was no longer pending at the time of the alleged retaliation.
 {¶ 19} As the State points out, some courts have applied R.C. 2921.05
to situations where an investigation is pending. See, e.g., State v.Miller, Portage App. No. 2004-P-49, 2005-Ohio-6708 (finding that evidence was sufficient to support the charge based on allegations arising from child support investigation; conviction reversed on other grounds). However, because of the plain words of the statute, we disagree with such applications.
 {¶ 20} In State v. Lambert (June 5, 1998), Montgomery App. No. 16667, the court interpreted a different part of R.C. 2921.05. However, theLambert court stated, "The statute at issue, which was introduced as H.B.88 on February 1, 1995, was described as expanding current law concerning intimidation to include *Page 7 
retaliation. Ohio Legislative Service Commission, Summary of Discussion on H.B.88, House Judiciary and Criminal Justice Committee, October 4, 1995. In addition, the distinguishing characteristic between intimidation and retaliation was said to be that intimidation occurs before a judicial decision, whereas retaliation occurs after a judicial decision has been rendered. Id. The retaliation statute, therefore, was intended to correspond to the intimidation statute in its effect, save that it is applicable only after judgment has been rendered on the underlying offense." Id.
 {¶ 21} We agree with the Lambert court that retaliation occurs after a "judicial decision" in the underlying criminal action. The "judicial decision" means that the underlying criminal action is no longer pending. However, we do not agree that a "judicial decision" is the only way to comport with the words "was involved in a criminal action[.]" For example, as we stated earlier, a prosecutor could dismiss the underlying criminal action, and it would no longer be pending.
 {¶ 22} Here, in regards to the sufficiency of the evidence, a review of the record shows that the State failed to show that the underlying OVI criminal action was no longer pending at the time of the alleged retaliation. Therefore, after viewing the evidence in a light most favorable to the prosecution, we cannot find that any rational trier of fact could have found all the essential elements of the crime of retaliation proven beyond a reasonable doubt.
 {¶ 23} Accordingly, we sustain Johnson's first assignment of error. We find Johnson's second assignment of error moot and decline to address it. See App. R. 12(A)(1)(c). We vacate Johnson's retaliation conviction and sentence and *Page 8 
remand this cause to the trial court for further proceedings consistent with this opinion.
 RETALIATION JUDGMENT VACATED AND CAUSE REMANDED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the retaliation JUDGMENT BE VACATED and this cause BE REMANDED to the trial court for further proceedings consistent with this opinion. Appellee shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.
 *Page 1