[Cite as *In re M.P.*, 2013-Ohio-3939.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

IN THE MATTER OF:            :

                          :         Appellate Case No. 2013-CA-5

    M.P.                  :

                          :         Trial Court Case No. C41808

                          :

                          :         (Juvenile Appeal from

                          :      Common Pleas Court)

                          :

                          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of September, 2013.

. . . . . . . . . . .

DAVID S. PETERSON, Atty. Reg. #0007836, and ROBERT HENDRIX, Atty. Reg. #0037351, Peterson and Peterson, 87 South Progress Drive, Xenia, Ohio 45385
       Attorneys for Plaintiff-Appellee

MARK EDWARD STONE, Atty. Reg. #0024486, and BRIAN A. KRUSE, Atty. Reg. #0087411, 3836 Dayton-Xenia Road, Beavercreek, Ohio 45432
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

     **{¶ 1}**     Pamela P. appeals the trial court's decision to change custody of her minor son

Johnny[1] from her to Rodney P., Johnny's father and the appellee, after she moved with Johnny from Ohio to Florida. Because the trial court's decision is supported by competent and credible evidence, we affirm.

**FACTS**

{¶ 2}    In 2010, the trial court entered an agreed judgment and order that designated Pamela Johnny's custodial parent. In 2011, Pamela filed a notice that she intended to relocate from Xenia, Ohio, to Punta Gorda, Florida. Rodney responded by filing a complaint for custody. The matter was referred to a magistrate who concluded that the custodial parent could not be changed because Pamela's mere intent to move did not satisfy the statutory change-in-circumstances requirement, R.C. 3109.04(E)(1)(a), which must be satisfied before an existing custody order can be modified. Rodney and Pamela each filed objections to the magistrate's decision.

{¶ 3}    In November 2011, the trial court sustained Rodney's objections. The court found that Pamela had all but moved to Florida and that this is sufficient to satisfy the change-in-circumstances requirement. Consequently, the court modified the 2010 custody order and designated Rodney the custodial parent. Pamela appealed, and we reversed. *See In The Matter of M.P.*, 2d Dist. Greene No. 2011 CA 71, 2012-Ohio-2334. We concluded that Pamela's mere intent to move to Florida was not sufficient to satisfy the change-in-circumstances requirement, and we remanded the case for further proceedings.

{¶ 4}    In June 2012, on remand, the trial court entered an order modifying Rodney's parenting-time schedule in light of Pamela's move to Florida. The following month, Rodney filed

---

[1] We will use this pseudonym to refer to M.P., the minor child in this case.

a motion for custody. In February 2013, after a hearing, the trial court sustained the motion. The court found that Pamela had moved with Johnny to Florida to live with a man named Tracy Y. Pamela and Johnny had been living in Ohio with Tracy, when he moved to Florida and invited them both to move with him. The court found that a volatile atmosphere surrounded Tracy. An altercation with his daughter's husband resulted in Tracy being convicted of attempted assault and criminal damaging. The court also found that all of Johnny's friends and family lived in Ohio and that he had no connection to Florida. The court modified the 2010 agreed order, designating Johnny's custodial parent as Rodney.

{¶ 5}    Pamela appealed.

## ANALYSIS

{¶ 6}    "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). The trial court must be permitted to determine the credibility of witnesses and their testimony. *Id.* at 419. "'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). In custody cases, the abuse-of-discretion standard is this: "'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'" *Id.* at 418,

quoting *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

**{¶ 7}**    R.C. 3109.04(E)(1)(a) restricts a court's authority to change a child's custodial parent. "[B]efore a trial court modifies an existing order of custody, it is * * * required to find, based on facts that have arisen since the prior decree or that were unknown to it at that time, that a change has occurred in the circumstances of the child [or] the child's residential parent * * * [and] that the modification is necessary to serve the best interest of the child." *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 19, citing R.C. 3109.04(E)(1)(a). The court also is required to find that one of the three circumstances in R.C. 3109.04(E)(1)(a)(i)-(iii) applies. The third is pertinent here: "The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). Pamela assigns three errors to the trial court's custody decision. Each challenges one of these required findings made by the court.

**{¶ 8}**    We first address, though, two fundamental misconceptions that underlie many of Pamela's arguments. Both misconceptions concern the June 2012 order modifying Rodney's parenting-time schedule. Pamela asserts that in this order the trial court approved her move to Florida with Johnny. We disagree. This order does not at all evaluate  the merits of Pamela's move. When a residential parent files a notice of intent to relocate, the court may "determine whether it is in the best interest of the child to revise the parenting time schedule for the child." R.C. 3109.051(G)(1). That is exactly what the trial court here did. Also, Pamela asserts that the June 2012 order is the existing custody order modified by the trial court. This too is incorrect. The order assumes custody and addresses only the parenting time of the non-residential parent. The existing custody order modified by the trial court is the 2010 agreed order, designating

Pamela the residential parent.

### *The Change-in-Circumstances Finding*

**{¶ 9}** The first assignment of error challenges the trial court's finding that a change in circumstances has occurred. Pamela contends that Rodney failed to show that the move to Florida had an adverse impact on Johnny and caused him actual harm. Also, she contends that the trial court improperly required her to prove a justifiable reason for moving to Florida.

**{¶ 10}** We have rejected the proposition that, to satisfy the statutory change-in-circumstances requirement, a change must have an adverse impact on the child. *Gartin v. Gartin*, 2d Dist. Clark No. 2011-CA-74, 2012-Ohio-2232, ¶ 9 (saying that "to satisfy the statute the change need not have an adverse impact"). Courts have "wide latitude to consider all issues which support such a change." *Davis*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. A court should not be prevented "from modifying custody if the court finds it is necessary for the best interest of the child." *Id.* at 420-421. The only limitation is that "the change must be a change of substance, not a slight or inconsequential change." *Id.* at 418; *accord Chelman v. Chelman*, 2d Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, ¶ 22 (saying the same, citing *Davis*).

**{¶ 11}** An out-of-state move coupled with other circumstances can constitute a "change of substance." *See, e.g., Green v. Green*, 11th Dist. Lake County No. 96-L-145, 1998 WL 258434 (Mar. 31, 1998) ("Although a relocation, by itself, is not sufficient to be considered a change of circumstances, it is certainly a factor in such a determination. In addition, the attendant circumstances, as well as the impact of such a move, can be considered by the court by [sic] determining if a change of circumstances has occurred."). "A court may consider the fact that a relocation of the child would remove him or her from a supportive network of family and friends

as a factor in finding that a change of circumstances has occurred[.]　　” *In re Longwell*, 9th Dist. Lorain No. 94 CA 006007, 1995 WL 520058 (Aug. 30, 1995). Thus an out-of-state move where all of a child's friends and family live in Ohio and the child has no connection to the other state can constitute a change in circumstances. *See, e.g., In re R.N.*, 8th Dist. Cuyahoga No. 87027, 2006-Ohio-4266, ¶ 14 (saying that such a move would have an impact on the child's "ability to continue or foster his relationships with both his father and his relatives in Ohio").

{¶ 12}　In July 2012, apparently shortly after our May 24, 2012 opinion, Pamela moved with Johnny to Florida. In our prior opinion we noted that there had been no change in circumstances because she had not yet moved and "Pamela testified that she would not relocate if it resulted in a loss of the custody of her child." *In The Matter of M.P.*, ¶ 18. She either had a change of heart, or had been untruthful. Nevertheless, once she moved, Rodney filed for a change of custody. The trial court found that in Ohio Johnny has friends that "he has established since birth" and "more importantly * * * family members on both Pamela's and Rodney's side." (Feb. 7, 2013 Decision, Order and Judgment, 4). And the court further found that "[t]he move placed approximately 1,200 miles between Pamela and Rodney, creating difficulties in Rodney's parenting time and depriving [Johnny] of family and playmates' relationships which he had already established." (*Id*. at 3). These findings are supported by competent and credible evidence. And facts like these satisfy the statutory change-in-circumstances requirement. *Compare Franklin v. Franklin*, 2d Dist. Montgomery No. 8696, 1984 WL 3850, *1 (Sept. 12, 1984) (saying that "[a]lthough a proposed move to another state does not in itself constitute sufficient justification for a change of custody, the new engagement and relationship of the custodian with her fiance, along with her stated intentions to change the child's environment from Dayton where

he associates with his grandparents and other relatives, does constitute a sufficient change in circumstances under which a modification of custody may be considered").

{¶ 13}  Pamela contends that the trial court improperly required her to prove that she had a justifiable reason for moving to Florida. She cites the court's decision where it says, "Had Pamela had a legitimate reason for the move, (i.e. a new job; military service; health; or even a matrimonial obligation) there might be a justifiable reason for her to move with [Johnny] and create the additional problems [in Rodney's exercise of parenting time and Johnny's relationships with his family and friends]." (Feb. 7, 2013 Decision, Order and Judgment, 3). This statement is not inconsistent with Rodney having the ultimate burden of proof. The trial court can be understood as saying simply that Rodney's evidence weighs in favor of changing Johnny's residential parent and Pamela failed to present evidence to tip the balance. Looking at the court's entire decision, we do not think that the court decided to change custody because Pamela could not give a good reason for moving.

{¶ 14}  The first assignment of error is overruled.

### The Best-Interest Finding

{¶ 15}  The second assignment of error challenges the trial court's finding that it is in Johnny's best interest to change his custodial parent. R.C. 3109.04(F)(1) instructs courts to determine a child's best interest by considering all of the relevant factors, including the relevant statutory factors listed in (a)-(j). Pamela argues that some of these factors weigh in her favor, including factors (c), (f), and (i). Factor (c) concerns the child's interaction and interrelationship with, among other people, his parents.  Pamela contends that the trial court failed to consider that for most of Johnny's life she has been his primary caregiver. While the role of the child's

primary caregiver should be considered in evaluating this factor, *Kochersperger v. Kochersperger*, 2d Dist. Montgomery No. 15802, 1996 WL 685561, *7 (Nov. 29, 1996), this factor should be considered "in determining the best interest of the child in the initial award of custody, not in the reallocation of parental rights pursuant to R.C. 3109.04(E)(1)(a)," *Chelman*, 2008-Ohio-4634, at ¶ 44. Factor (f) concerns which parent is more likely to honor and facilitate parenting time, and factor (i) concerns whether the residential parent has continuously and willfully denied the other parent's court-ordered right to parenting time. Pamela says that Rodney failed to honor or facilitate and denied her court-ordered parenting time after we reversed the trial court's first change-of-custody decision. Believing that the March 2010 order went back into effect, Pamela says that she called Rodney about picking up Johnny, but Rodney refused to give him to her for several days. We suspect that Rodney could reasonably have been uncertain about the effect of our reversal and do not think that the trial court needed to find that either of these factors weighed in Pamela's favor.

{¶ 16} "[W]hile the court is required to consider these [statutory] factors, it retains broad discretion in making a best interest determination." *Chelman* at ¶ 36. Few of the statutory factors are relevant in this case, and the trial court appears to have relied more on non-statutory factors that it found relevant. The court cited the volatile atmosphere surrounding the man Pamela and Johnny were living with, Tracy Y. The court found that Tracy's behavior is not conducive to Johnny's best interest. The court also cited the fact that all of Johnny's family and friends live in Ohio and that he has no real connection to Florida. Competent and credible evidence supports these findings.

{¶ 17} The second assignment of error is overruled.

### *The Balance-of-Harms Finding*

**{¶ 18}** The third assignment of error challenges the trial court's finding that the harm likely to be caused to Johnny by moving back to Ohio is outweighed by the advantages to him of moving back. The court found that the only harm that Johnny would suffer is the few classmates and friends he has developed during his seven months in Florida. The advantage to moving back to Ohio, found the court, is that he would be near his friends and family and his father. The court found that Johnny's family and friends all live in Ohio. The court further found that the school that Johnny attends in Florida operates on a year-round schedule, which combined with the distance between Florida and Ohio, makes it difficult for Johnny to see Rodney.

**{¶ 19}** Pamela's argument, in essence, challenges the trial court's view of the testimony. As we said above, a reviewing court must defer to a trial court's evaluation of the evidence. "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Davis,* 77 Ohio St.3d, at 418, 674 N.E.2d 1159, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80-81, 461 N.E.2d 1273. Competent and credible evidence supports the court's balance-of-harm finding.

**{¶ 20}** The third assignment of error is overruled.

**{¶ 21}** The trial court's custody decision is supported by a substantial amount of credible and competent evidence. Therefore the court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM and YARBROUGH, JJ., concur.

(Hon. Steve A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

David S. Peterson
Robert Hendrix
Mark Edward Stone
Brian A. Kruse
Hon. J. Timothy Campbell
(Sitting by Assignment)